### COMMONWEALTH *vs.* RALPH KIMBALL.

Suffolk.    April 7, 1947. — May 27, 1947.

Present: FIELD, C.J., QUA, DOLAN, WILKINS, & SPALDING, JJ.

*Evidence,* Admissions and confessions, Presumptions and burden of proof.

A conviction of indecent assault was warranted by testimony that the defendant had made a statement to the witness admitting commission of the assault, notwithstanding that there was no other evidence of the defendant's guilt and that the alleged victim testified that no assault was committed.

COMPLAINT, received and sworn to in the Municipal Court of the Dorchester District of the City of Boston on October 3, 1946.

Upon appeal to the Superior Court, the case was tried before *Briggs,* J., a District Court judge sitting under statutory authority.

*W. G. Hollingsworth,* (*T. E. Dwyer* with him,) for the defendant.

*W. I. Hennessey,* Assistant District Attorney, for the Commonwealth.

WILKINS, J.    The defendant was convicted upon a complaint that on or about September 4, 1946, he "did indecently assault and beat" Bertha E. Kimball. His exceptions to the denial of requests for instructions and of his motion for a directed verdict of not guilty raise the question whether he could be convicted upon his own uncorroborated admission of guilt.

In the Superior Court the testimony was given by three witnesses for the Commonwealth. Bertha E. Kimball testified that she was fourteen years of age on June 22, 1946;

that the defendant was her father; that on September 4 her mother was in the hospital and that she was at home alone with her father, but that nothing happened to her; that prior to her testimony in the Superior Court she had spoken with Maurice McCarthy, a police officer; that she had testified in the Municipal Court of the Dorchester District; that since her testimony in the Dorchester court her mother had died and she had been living with an older sister; that she testified in the Dorchester court that on September 4 her father had taken her to bed with him; that the incident never happened; that she had testified in the Dorchester court that on September 4 her father had placed his hand upon her in an indecent manner; that in fact he had never done this to her; that her testimony in the Dorchester court was a mistake; that she had so testified because she was "mad at" her father; that she had previously told the same story to the clerk of the Dorchester court; that she had not spoken with anyone concerning changing her testimony; that, when she first made the accusations, she had not realized how serious it was going to be; and that her testimony in the Superior Court was given voluntarily.

Maurice McCarthy testified that he was a police officer of the city of Boston; that in September, 1946, he talked with Bertha Kimball and her mother; that he later talked with the defendant; that he told the defendant that his daughter "claimed" that he had been in bed with her and had put his hand upon her in an indecent manner; that the defendant replied that it was true, that he was lonesome, that it must have been in one of his weak moments, and that it happened once, and never happened again; that Bertha Kimball went to the Dorchester court in September and repeated the accusations to the clerk, whereupon the complaint issued; that she testified in the Dorchester court that on the day in question the defendant had taken her to bed with him and placed his hand upon her in an indecent manner; and that the defendant denied the accusations in that court.

Bertha Chapin testified that she was a representative of

the Society for the Prevention of Cruelty to Children; that she had spoken with Bertha Kimball in the latter part of September after Bertha Kimball had spoken with Officer McCarthy; and that Bertha Kimball had told her that "sometime previously" the defendant had asked her to go to bed with him, but that she did not want to, and ran out of the house.

The judge instructed the jury at the defendant's request that they could not consider as evidence against the defendant statements of witnesses made outside of court, but could convict him only on the testimony of witnesses produced during the trial; and that the introduction of prior inconsistent statements of the daughter could be considered not as evidence of the defendant's guilt, but only as bearing upon her credibility.

The judge, subject to the defendant's exception, denied two requests for instructions presented by the defendant: "2. In view of the fact that the defendant is charged with an indecent assault and battery on his daughter and in view of the fact that the daughter now testifies during this trial that no indecent assault was committed upon her by the defendant, they must return a verdict of not guilty against the defendant. 3. The jury cannot convict the defendant on his alleged admission made prior to this trial in view of the testimony of the daughter that no assault was committed upon her."

The net effect of the rulings was to exclude from the consideration of the jury as evidence of guilt everything save the admission of the defendant to the police officer, but to permit them to convict on that admission alone. The defendant contends that he cannot be thus convicted in the face of the daughter's testimony denying the commission of the crime charged. He points out that the general rule elsewhere in this country is that guilt cannot be established by the confession of the accused unsupported by corroborative evidence. See *Commonwealth* v. *Killion*, 194 Mass. 153, 154–155; Wharton's Criminal Law (12th ed.) §§ 357, 359; Wigmore, Evidence (3d ed.) §§ 2070, 2071; 20 Am. Jur., Evidence, § 1242; 40 Am. L. R. 460; 127 Am. L. R. 1130.

That rule, however, does not obtain in this Commonwealth. "The trend of modern decisions is in the direction of eliminating quantitative tests of the sufficiency of evidence." *Commonwealth* v. *Gale*, 317 Mass. 274, 277–278. In *Commonwealth* v. *DiStasio*, 294 Mass. 273, 286, one assignment of error was the refusal of the judge to instruct the jury that "the defendant cannot be convicted on his alleged confession or admission only." There was in fact corroborative evidence, but nevertheless it was said that "no such artificial quantitative rule . . . has any place in the law of this Commonwealth." And again in *Commonwealth* v. *Mabey*, 299 Mass. 96, in reference to the same question it was said at page 99, "Even if the confession had been wholly without corroboration in the other evidence, the case would have been proper for the consideration of the jury." While it may be said that neither statement was necessary to the decision, it is none the less true that each was made consciously and deliberately as the view of the court. The question now confronts us. We regard the view expressed in those cases as sound and as controlling here. See *Commonwealth* v. *Tarr*, 4 Allen, 315, 316; *Commonwealth* v. *McCann*, 97 Mass. 580, 582; *Commonwealth* v. *Sanborn*, 116 Mass. 61, 62, 64; *Commonwealth* v. *Holt*, 121 Mass. 61, 63; *Commonwealth* v. *Morrissey*, 175 Mass. 264, 265; *Commonwealth* v. *Killion*, 194 Mass. 153, 154–156; *Commonwealth* v. *Zelenski*, 287 Mass. 125, 130. There was no error in the rulings of the judge.

*Exceptions overruled.*